Hear ye, hear ye, hear ye. The United States Court of Appeals for the 11th Circuit is now open according to law. God save the United States and this honorable court. Good afternoon, this is Judge Wilson in Tampa, Judge Jordan is in Miami, and Judge Branch is in Atlanta, and we're here for oral argument in Charles Department of Corrections. And Matt Schultz is here for Appellate Clark, and James Roy Howitz is here for the Alabama Commissioner. And we're ready to proceed and I would advise counsel that we've read the briefs and we're familiar with the background of the case and we've examined parts of the record if that will assist you in narrowing the focus of your arguments this afternoon. Mr. Thomas is the courtroom deputy and he will let you know when your time is up and he will give you a two-minute warning before your time expires. And with those comments, I believe we are ready to proceed. And Mr. Schultz, are you ready to present your argument? Yes, I am, Your Honor. May it please the court. Your Honor, my name is Matt Schultz and it is my privilege to represent Charles Clark in this appeal. Your Honor, this case actually involves a very straightforward application of Martinez v. Ryan and Trevino v. Thaler. However, due to some misconceptions by the district court and the Commissioner's reliance on language taken out of context from pre-Martinez cases, the issue may seem more complex than it actually is. As an initial matter, this is not a case where we are asking this court to extend Martinez in any way. In fact, two of the best cases demonstrating how Martinez applies here were cases from the Supreme Court and recently the Eighth Circuit where the courts declined to extend or even apply Martinez. But in so doing, they described claims to which Martinez would apply and those cases were substantively indistinguishable from Mr. Clark's. Looking at those two cases, I'd first like to talk about the Eighth Circuit's recent decision in Thomas v. Payne. I filed a 28-J letter on that case. That case is rather instructive. In Thomas, the Eighth Circuit walked through two different trial court ineffective assistance of counsel claims focusing on when they were defaulted and that was proper given the central concern of Martinez that the Supreme Court wanted to eliminate situations where no court would ever hear a substantial claim of trial counsel ineffective assistance. So looking at the two claims, one of the claims was presented to the initial collateral review court in state habeas. Evidence was put forth and the claim was ruled upon by the circuit court. Thus the Eighth Circuit explained that Martinez could not apply to that claim because at least one court had ruled upon it. A second claim, however, was not presented to the state courts at all, like Mr. Clark's was not presented to the state courts and so no state court had ever ruled on it. So the Eighth Circuit recognized that Martinez therefore would apply to that claim so long as the claim was substantial. Now in that case, the claim was a claim that trial counsel failed to object to the size of the jury veneer and obviously there would have been no conceivable way of demonstrating prejudice from that claim because you can't go back in time and see who would have been on the veneer and how they may have voted. So they found that the claim was insubstantial. However, the key to that case in terms of Mr. Clark's case. Well, that claim was raised in a post-conviction proceeding though, right? That's correct, Your Honor. Well, we don't have that. We don't have that in this case, do we? We have it raised and then it was abandoned. So we don't have on this record ineffective assistance of post-conviction counsel, do we? Well, actually, Your Honor, with all due respect, I would disagree with that and so has the Commissioner. If I could explain that a little bit, if I'm taking a case in post-conviction counsel in Alabama and I file a petition on behalf of the petitioner and later I file an amended petition but I drop some of the claims from the original petition, the only claims in front of the court that the court is actually able to rule on are the claims in the amended petition. Essentially, that's what happened here because trial counsel or post-conviction counsel affirmatively dropped those claims from the petition. So the petition was not, those two claims were not in the petition as it was presented to the evidentiary hearing and the Commissioner... Counsel, this is Lisa Branch. Just in looking at the Rule 32 trial court order, the court said Clark failed to carry his burden of proof with regard to this allegation. Therefore, it is denied. That's true, Your Honor. However, the Commissioner himself has even recognized that that was an odd way to rule on the claim and that it was inappropriate to rule on that claim. I would point to the state's brief at 11 and note 3. This is one area and I grant the Commissioner credit on this. The Commissioner agrees with us that the claim was never presented to any state court and that he stated that also in the Statement of Issues that Mr. Clark has never presented his ineffective assistance of counsel claim to any state court. The fact that the trial court, the Rule 32 trial court did phrase the order this way, could it have been appealed, Your Honor, because the claim was affirmatively dropped and so therefore... But you've got a Rule 32 trial court order that says it was denied, but I guess my point is there was no attempt was made to appeal it. Is that correct? That is correct, Your Honor, and we recognize that had the claim actually been ruled on substantively, like in the Thomas case out of the on before it, and then they failed to appeal it, then Mr. Clark would be out of luck. However, this case is really more akin to Martinez where they filed a statement saying that they don't have any claims. And so once again, both the Commissioner and Mr. Clark agree that this claim was never presented to any state court. As a matter of fact, the Commissioner in the district court stated... Doesn't that make it, doesn't that make this case different from Martinez in Trevino because there the claims were presented to an appeal through the state court system? Well, Your Honor, it really doesn't, and that kind of goes to the the long-standing interplay between exhaustion and procedural default, and there is some confusion on that. The district court... It's still the law, it's still the law, isn't it, that these claims have to, we have to give the state courts the first opportunity. A fair presentation of the claim has to go to the state courts. You just can't skip over the state courts, can you? That is true, Your Honor. However, given the interplay between exhaustion and procedural default, I would point this court to three cases from this case. One of those cases was even cited by the Commissioner in the district court. In Bailey v. Nagel, this court, and I'm quoting from this court, stated the familiar principle that the federal courts may treat unexhausted claims as procedurally defaulted, even absent a state court determination to that effect, if it is clear from the state law that any future attempts at exhaustion would be futile. This court then discussed both kinds of those procedural defaults, but what the Commissioner and the district court failed to recognize is that even in that case, and I can't emphasize this enough, the court then discussed whether the petitioner could establish cause to excuse that procedural default. Kelly is even more clear, because Kelly discussed O'Sullivan and stated, and this is a quote from Kelly, that the habeas petitioner can escape the exhaustion requirement only by showing cause for the default. In other words, and Snowden made this very clear as well, and it probably explains Martinez and Trevino and what happened there a little bit better. Snowden to be singletary, this court explained that the district courts are free to send the claims back to the state court if there's a reasonable possibility that the state court might hear the claim. There, they agreed with the district court that there was no reasonable possibility that the state court would hear the claims, and they thus treated them as technically exhausted and procedurally barred, but again, and very importantly, this court still recognized that the claims could be heard if the petitioner could establish cause to excuse the procedural default. Now, of course, in all of those cases, particularly Kelly, Kelly was a claim of trial court in effective assistance of counsel, but it came down long before Martinez, so Martinez did not exist as allowing cause for the, to And again, the cases that I cited out of the Third and the Sixth Circuit, and the Fourth and the Fifth Circuit has since joined on on this as well, but Workman B. Bay out of the Third Circuit, as well as Atkins out of the Sixth Circuit, and the Eighth Circuit itself explained this very well, how all of this works. So, at the very least, because the claim was dropped, if the district court felt that there was some chance that the state courts might still hear the claim, it should have stayed the proceedings, allowed Mr. Clark to go back to the to the state court, and then almost assuredly, the state court would have denied it as procedurally defaulted because it was abandoned, and then we'd be back up here, but that, of course, goes to the judicial ping-pong that I talked about in Kelly, which makes it, makes it inapplicable. So, really, there would have been no purpose for the Martinez court to discuss exhaustion or O'Sullivan because if the claim was exhausted, then the petitioner could go back and have that claim addressed in the state court. However, the intertwining of exhaustion and procedural default automatically render any unexhausted claims procedurally defaulted, and they could no longer be raised in the state court. Plus, if the commissioner's view of this and the district court's view of this is held to, it would completely undermine the central concern of Martinez, which was that no court would ever hear a substantial claim of trial counsel ineffective assistance, and that being the main concern of Martinez, it is clear that Martinez should apply in this particular case. Mr. Schultz, this is Judge Jordan. Can I ask you a question, please? Yes, Your Honor. Are you familiar with our decision last year in Watley v. Warden? Yes, Your Honor, and I actually addressed that claim in my reply brief. Well, I dissented on the shackling ineffectiveness issue in Watley, so I believe the case was wrongly decided on that issue, but it constitutes binding precedent, and my question to you is this. Martinez requires that the underlying claim have some substance to it, and Watley indicates that in an ineffectiveness scenario where the underlying deficiency is the failure to not just the presumed prejudice you would get in a normal shackling scenario, and in Watley, the majority conducted a prejudice analysis by looking not just at the effect that shackling might, visible shackling might have on a jury, but also on the extent of the evidence against the petitioner and how Watley requires the showing of actual prejudice and not presumed prejudice. How can your client show that under Martinez given the weight of the evidence against him? Yes, Your Honor, and I would first point out to Your Honor that I did recognize Watley and I did address it in our reply brief, so I would refer Your Honor back to that. However, there are a couple of very key things out of Watley. First off, we do recognize, and I recognized in my reply brief, that if this case is remanded as it should be, ultimately we will have to show that the outcome of the, that there's a reasonable probability that the outcome of the trial would have been different. However, right now we are still at the pleading stage, and so Miller L. B. Cockrell, as the Supreme Court stated in Martinez, would be the determinative standard at this particular point. Also, if you compare our case to Watley, I would point this case, I did distinguish this case from Watley a great deal. In Watley, number one, the shackles were only used during the I mean, obviously at that point the jury knows that the accused has been adjudicated guilty of a violent crime, so it's going to be a lot less shocking to see him in shackles as opposed to during the trial when the defendant is supposed to be presumed innocent. Also, as you pointed out, Judge, in Watley, and the District Court also discussed this in Jones and Markard, the evidence all involved extremely overwhelming evidence on all of the elements of the crime. Here the state's own expert witness testified that, as to the element of a particularized intent to kill, it was, and this is a quote from him, it was equally possible, if not more so, that Mr. Clark did not have an intent to kill. Thus, the state's own expert testified that, as to the element regarding a specific intent to kill, the state likely failed to meet even the preponderance of the evidence standard, much less any reasonable doubt. There were some other differences as well. This case was not a unanimous decision. It was 11 to 1. Mr. Clark had no violent criminal history, and so all of those those things distinguished Watley and Markard and Jones a great deal. The other thing that I would point out is in L. H. V. Duggar, this court stated, and I'd really like to highlight this quote, that as when arguing about the evidence regarding whether or not physical restraints are necessary, and this is the quote from the court, only with an adversary process can the reliable evidence be sorted out from the unreliable. So we don't deny that in an evidentiary hearing, the commissioner, of course, would have every opportunity to put on evidence that this was perhaps reasonable, but even in L. H. V. Duggar, and even when it involved only the penalty phase, this court still made it clear that the court had to have a hearing. It had to make it clear that the accused needed to be in physical restraints, that it was the least restrictive alternative, it needed to consider alternatives to the restraints, and it had to decide that if they were going to use the restraints, it had to do everything possible to ensure that the jury does not see those restraints. But Watley decided prejudice without a hearing on any of those issues. That's true, but Watley also had all of that other evidence in front of it at that point. Well, this is Judge Wilson. In this case, we have affidavits by two jurors. Do the affidavits, do the jurors say whether or not the visibility of the restraints and their knowledge of the restraints during the course of the trial had an impact on their verdict? Well, we didn't want to ask them that because we were concerned about that jury's deliberative process. However, there is evidence that it did because we did also put three juror affidavits out showing that three of the jurors believed that Mr. Clark did not intend to kill Mr. Ewing, and yet the two jurors who did see the shackles felt that Mr. Clark did intend to kill Mr. Ewing. Do we know from the record whether or not the two jurors who signed the affidavit, do we know whether they were the one juror that did not vote with the majority? Do we know that from this record? I believe we may. I'm sorry to say that I don't, I mean, I do know, I know that it was not one of those. However, I don't believe that that, I believe it may be in one of the one of the other affidavits that the juror admitted that he was one of the ones who voted for life, but that was not one of the jurors who saw the restraints. Counsel, there's no evidence in the record of why the counsel representing your client at the Rule 32 trial court hearing, why that counsel raised the issue about the restraints and then abandoned it. Is that correct? That is correct, Your Honor, and the district court addressed that and said that it is difficult to understand why trial counsel did not object, obviously saying that an evidentiary hearing would be necessary to determine that, but he also, the district court, and this is at document 61 at page 12, stated that nothing in the record indisputably supported visibly shackling him. He also stated, and this is also a quote from the district court, that presumably because he had no evidence that the juror saw Mr. Clark in the restraints, he dropped the claim because, and this is also a quote, no other good reason to abandon an otherwise sound claim appears. So what we're telling this court is, we of course are not asking this court to just simply grant relief, habeas relief. We recognize that this is not a fact-finding court, and as Elledge pointed out, only for an adversarial process can the reliable evidence be the case for the district court to have an evidentiary hearing to flesh those issues out. Counsel, I guess my question is more, you have not, you put in two affidavits of whether the jurors saw the shackles. You have not put in anything into the record that explains why the counsel at the Rule 32 trial court level raised the claim and then abandoned it. Well, effectively we have, Your Honor, because at this point, at the pleading stage, everything that we plead has to be considered as true, and we did plead that counsel failed to interview the jurors, and there is evidence to support that, because every single juror that we spoke with, and all of the affidavits show this, stated that no one ever came to speak with them about this case, much less anyone representing Mr. Clark. There's no evidence in the record about the reason why the counsel abandoned this claim. There's no evidence of whether this was a strategic decision. Is that correct? There's no evidence as to whether or not it's a strategic decision, but there is evidence that it was not, and again, the district court agreed with that, because the district court stated, presumably, because he had no evidence that the jurors saw Mr. Clark in the restraints, and again, we admit that we will have to call him in an evidentiary hearing, but we were denied that opportunity to have an evidentiary hearing to flesh those things out, but we did plead that the reason that he dropped the claim was because he had failed to interview the jurors. And let me ask you one thing. You've said a couple of times, visible shackles. Certainly, we know from the affidavits that two jurors saw the shackles. Do we know if the shackles were under his clothing, and was the intention that the shackles wouldn't be seen, and they happened to be seen, or were they very visible in that? In the record, obviously, we've pled that the shackles were visible, and so obviously that would have to be fleshed out a little bit more at the evidentiary hearing, but we do know that it was obvious that the jurors could see them. I would also point out that if you look at LHB Duggar, the court did have to consider lesser restrictive alternatives. They also had him in a shock belt, and I would note that none of the jurors told us that they saw the shock belt, so that would have been a lesser restrictive alternative that would have met the same goals. So the initial allegations in the state post-conviction proceedings indicated that the stun belt was underneath the clothing. The leg brace was actually a, and I'm just speaking here from what I know from having spoken with Mr. Clark, the leg brace was a rather large object that covered his entire leg, so it stuck out from underneath his pants, and it would have been visible. And again, one of the jurors remembered it so vividly that he described him as seeing him in shackles, which, of course, technically it is a shackle. The Webster's definition of a shackle is a device used to bind the legs or arms. I just didn't want to misrepresent anything and have this court think that I was presenting this as if these were these giant, you know, old leg shackles, you know, with a giant chain in between, because I am an officer of the court. But these... This is Judge Wilson. Who obtained the two affidavits? The two affidavits were obtained by myself and people assisting me, Your Honor. Okay. After... And they were obtained after you filed your petition for writ of habeas corpus in federal court? I believe they were obtained before we filed the petition for writ. We attached them as exhibits, if I recall correctly, to the petition for writ in state habeas court. The state actually objected to us attaching them, but the district court denied their objection and allowed us to maintain those. And of course... Counsel, your time has expired. Okay. Thank you, Your Honor. I'm happy to answer further questions from the court at this time. Otherwise, I can certainly answer further questions in All right. Thank you, Mr. Schultz. We'll now hear from Mr. House on behalf of the commissioner. May it please the court. Good afternoon. James House appearing for Warden Cynthia Stewart on behalf of the state of Alabama. Martinez was an equitable rule issued in response to the state of Arizona's refusal to consider a trial level six amendment claim under its successive petition or prior collateral proceeding rule. And while much of the decision is devoted to discussing the relative inequities of certain states post-conviction procedures, at the end of the day, it was the Arizona court's reliance on a procedural default that was potentially caused by inadequate initial review collateral counsel that the court held might be excused. So in short, Martinez said that where a state court refuses to entertain a substantial claim of trial level ineffectiveness based on a procedural default caused by inadequate initial review counsel, a federal court can reach that claim. But that is not what happened here. In this case, Mr. Clark decided that he would altogether forego review of his trial level sixth amendment claim in a state court. And as a result, it is uncontroverted that no Alabama court has ever been confronted with the physical restraint and effectiveness claim contained in Mr. Clark's habeas petition, nor has any Alabama court ever relied on a procedural bar to refuse to consider that claim. But those two things, those two things were present in Martinez. No state court ever was presented with the ineffectiveness claim because it wasn't made, right? That would be incorrect, Your Honor. In Martinez, they returned to court and Arizona refused to entertain the substantive sixth amendment claim because they said it should have been brought in the initial post conviction proceeding and that they would not consider a successive petition where the claim could have been brought previously. So an Arizona court refused to consider the claim on the merits and relied on a procedural default. And what's happening here is Mr. Clark is asking this court to make a procedural default determination on behalf of the Alabama courts, but this federal courts cannot do as far back as you're arguing. You're arguing that he has to go back and file a successive post conviction petition, allege the ineffectiveness of first post conviction counsel, have the Alabama courts say no, and then come into federal habeas and plead Martinez respectfully, Your Honor. I can represent the state and its executive branch role as a prosecutor, and I can defend the state's judicial judgments in federal court. I cannot speak on behalf of the judicial branch of Alabama or the Alabama Supreme Court. And Your Honor's question presupposes that had Clark filed an exhaustion petition that today the same equitable concerns announced in Martinez by the U.S. Supreme Court would not be incorporated into rule 32 under a decision titled ex parte Clark. No, that's not what I'm asking you. I'm asking you what would Mr. Clark have had to do to get to come within the rule in Martinez to file an exhaustion petition and have the courts in fact refuse to consider it on the merits based on a procedural default that is attributable to initial review counsel. He would have had to file another successive post conviction motion making that argument, right? Yes, if I didn't make that clear, I'm sorry, Your Honor. He would have had to go back to state court and file an exhaustion petition setting forth both the Sixth Amendment ground and asking for the court to consider it because of the inadequacies of counsel. And I think an important point is that as far back as Harris v. Reed in 1989, the Supreme Court held that state courts could both deny a federal constitutional claim on an independent and adequate state law grounds, yet still issue a merits ruling in the alternative without fear of quote, sacrificing its interests in finality, federalism, and comity. And now that Martinez is the law of the land, it is probable that many states' courts, not just Alabama, would look to the merits of a trial level ineffectiveness claim under a Martinez-type procedural posture, even if only as an alternative holding to a procedural default ruling. So Mr. Clark... This is Judge Wilson. Counsel, does Mr. Clark have an opportunity to state court in application to file a second or successive motion for post-conviction relief alleging ineffective assistance of post-conviction counsel at his initial Rule 32 proceeding? For the same equitable reasons announced by the Supreme Court in Martinez, I believe that would be the case. For example, prior to 2012, the prevailing federal view... When you say that would be the case, the answer is he can file an application for... He may, Your Honor. Okay. And I would... Even if the presumption, which seems to be Mr. Clark's position, is that the state courts would just automatically reject it on a procedural default, I would note that prior to 2012, the prevailing federal view was that the inadequacies of collateral counsel were not grounds to ignore or excuse a claim that had been defaulted because of collateral counsel's representation. And thus, it was no accident that Martinez's request to have the procedural default excused in federal court was denied at the district court level and the circuit court of appeals level. It took a decision of the U.S. Supreme Court to craft the equitable rule that resulted. And yet, the Alabama Supreme Court has not had the opportunity or occasion to decide whether the equities underlying the rule in Martinez would warrant similar consideration in Rule 32 proceedings as to Mr. Clark, because Mr. Clark did not ask for or seek that relief. And if federalism means anything, it means that a U.S. district court may no more bind the Alabama Supreme Court to a determination that it has not made than the district court in Martinez could have bound the U.S. Supreme Court to its reading of Coleman in that case. Without doubt, ADEPA does not support a system that would take away from the Alabama Supreme Court the same type of discretion and authority that allowed the U.S. Supreme Court to reach its decision in Martinez. But that is what Mr. Clark's rule would do. So, for example, had he filed an exhaustion petition containing the same physical restraint claim as in his habeas petition, it is impossible for this court to say that the Alabama Supreme Court's response to the same equitable concerns identified by its federal counterpart in Martinez, again, would not be known today as ex parte Clark. And it also has the Alabama Supreme Court or the Alabama Court of Criminal Appeals ever encountered a scenario like this one and issued a ruling? I will say this, Your Honor. If they have, I am not aware of it. But I will also say that in preparation for today, I did not specifically look in that direction. So, you think, I don't want to put words in your mouth, but you think it's theoretically possible that Mr. Clark could have pursued this avenue, but there are no case law, there's no case law you're aware of that says that it is actually available? That's correct. Just as there was no, you know, Supreme Court case law prior to 2012 that said the rule of Coleman does not apply in this instance. And if the rule in Martinez and the equities mean anything, Your Honor, it would mean that if the Supreme Court has said that it wants a certain class of state prisoner claims to be subjected to at least one review in at least one court. And if that is true, it cannot be said that under ADEPA, the preference is for that claim or that court to be a federal court to the exclusion of state courts to not have the opportunity to correct the constitutional violation first. And here's another issue with Mr. Clark's position asking a federal court to make a binding determination on the Alabama Supreme Court without giving the Alabama courts a chance to invoke equity, just as the Supreme Court did in Martinez. A state court that enters an alternate merits ruling as they're allowed to do under Harris v. Reed would be entitled to ADEPA deference in federal court, even if they also relied on an adequate and independent state law grounds. But if Martinez allows a state prisoner like Mr. Clark to take an unexhausted Sixth Amendment trial level claim directly to a federal court, then a state conviction will be subjected to de novo review for no reason that is attributable to the state and without any known impediment to the state prisoner presenting that claim in state court. And again, that's the exact opposite of ADEPA's purpose. This is Judge Wilson. If Mr. Clark's conviction proceeding had not abandoned the ineffective assistance of trial counsel claim, would he be entitled to the holding in Martinez v. Ryan? No, if he had not abandoned it and received the merits ruling, he would definitely not apply or qualify under Martinez. Okay. Why can't it be said that abandoning the claim because you failed to interview the two jurors who saw the restraints could constitute ineffective assistance from counsel by post-conviction counsel? Your Honor, respectfully, I don't see how that's any different than what occurred in Martinez, where the attorney there filed an Anders-type brief saying that she could find no culpable issue, and then Arizona asked the prisoner to submit any issues that he wanted considered. Abandoning a claim versus filing an Anders brief, that's one and the same. But in Martinez, the requirement, the procedural default that was excused was when the petitioner went back to Arizona and said, this Anders brief was wrong. This is a substantive Sixth Amendment claim that has not been presented because my initial collateral counsel filed an Anders brief. Look at it. And the Arizona court said, no, it should have been brought in the prior petition. And that is the procedural default that the Supreme Court excused or said could be excused in Martinez. And the rights of the state's judiciary are the main problem with Mr. Clark's theory that judicial ping pong doctrine should allow a federal court to invoke a procedural default on a court's behalf. But even if the court indulges that federal courts can bind Alabama's Supreme Court to a decision that it hasn't made, it begs an important question. What procedural ground would a federal court invoke in the name of the state? I hope we can all agree that had the Arizona initial review post-conviction court reviewed Mr. Martinez's claim on the merits, but that afterwards collateral appellate counsel missed the deadline for filing the discretionary review petition in the Arizona Supreme Court, the resulting failure of the claim to be considered by the Arizona Supreme Court would fall under Coleman and not Martinez. Again, Martinez was based on the fact that the procedural default applied was caused by the failure of an adequate initial review counsel as opposed to appellate counsel or counsel in another proceeding. So the type of procedural default and the cause of the procedural default are important. In this case, the decision to bypass the state courts in the presentation of the physical restraint claim in the habeas petition, it's not attributable to Mr. Clark's initial review collateral counsel. That decision was made after the conclusion of the Rule 32 proceeding. The earliest juror affidavit suggesting that Clark's restraints were visible to any member of the jury was dated February 18, 2016. The second juror affidavit concerning physical restraints was executed in court determined that a Martinez-esque exception should be read into Rule 32, maybe as a form of newly discovered evidence. There is still the question of the statute of limitations. Rule 32 carries a one-year statute of limitations or six months after newly discovered evidence is found. By failing to file an exhaustion petition or to petition for stay and abate in district court, Clark has moved his case well beyond any conceivable statute of limitations. So for example, if Clark was to return to state court now and an Alabama court denied an exhaustion petition, not because of the successive petition rule or not because it could have been raised in a prior collateral proceeding, but based on the statute of limitations, that procedural default would be attributable to habeas counsel, not Mr. Clark's initial collateral review counsel. In that case, the type of procedural default would matter. And since we're talking about rules of holding, that latches would bar the creation or application of an equitable rule in this case after the state prisoner failed to seek vindication in state court for over four years. It cannot be said that the Supreme Court in Martinez, Trevino, and Davila recognized the unseemliness of a federal court upsetting a state court conviction without first giving the state court an opportunity to correct the constitutional violation, but then adopted an equitable rule that does not require any effort to first present that colorable claim to those very state courts. If you had to pick one case that supports your interpretation of Martinez, what do you think is the strongest one? Well, I mean, Martinez itself, because again- No, I'm looking for lower court opinions interpreting and applying Martinez. I mean, I think- You say that for Martinez to apply, the state courts have to be given an opportunity to address the claim that was abandoned, waived, forfeited, not presented. And so my question to you is, what lower court opinion applying or interpreting Martinez best supports your position? I would have to say, I believe it's, I mean, Hitson that we cited in our brief would come to mind in that, in Hitson, the petitioner had to go back to Georgia and file an exhaustion petition before they could come into federal court and raise that claim. And I mean, I don't see how any lower court decision could basically excuse a procedural default where, by definition, an unexhausted claim, a state can't procedurally default that. No Alabama court has ever made a decision that has procedurally defaulted Mr. Clark's claim. He simply never went there and asked. There are a couple of other circuits that seem to weigh at least a little bit against your reading of Martinez, right? I don't agree or I have not seen a court yet that I think clearly said the exhaustion requirement does not exist. Again, it would be odd to read Martinez as abrogating the exhaustion requirement, where again, the procedural default that was excused was the procedural default found by the Arizona courts when they refused to consider the successive petition. This is Judge Wilson. Am I misreading Martinez? Because the way I read Martinez is that the exhaustion requirement is excused if the petitioner can show ineffective assistance at the initial review collateral proceeding. Am I misreading Martinez? I believe you are, your honor. I would suggest that that would be a reading that conflates exhaustion and procedural default, because again, the procedural default in Martinez was the failure to go back. I mean, for the failure of the Arizona courts to consider the second petition that brought the substantive claim and said that the initial counsel shouldn't have filed the Anders-like brief. If the court refers to Davila, you know, Davila talks about- Yeah, but if you can show ineffective assistance at the first review collateral proceeding, that's sufficient to show cause to excuse the procedural default. Am I wrong about that? Yes, your honor. If you look at Davila, Davila talks about the rules that apply, the two fundamental tenets of federal review of state court convictions. The first is a state prisoner must exhaust available state remedies before presenting his claim to a federal habeas court to avoid the- I understand all that, but it seems as if Martinez versus Ryan carves out a very narrow exception to that rule that you are articulating right now. Then it would make no sense in Davila in that conversation to then only turn to the concept of procedural default, and it's the concept of procedural default or the equitable doctrine that allows an independent and adequate state law ground for denying relief to be excused or ignored. A procedural default, by definition, is an adequate and independent state law ground for denying relief. An unexhausted claim has never been presented to a state court. Therefore, a state court can have never applied a procedural default to that claim. But federal courts ever since Teague v. Lane applied procedural default on their own, even when a claim has never been presented to a state court, they don't require a habeas petitioner to go back to the state courts to then have the state courts tell them, under settled state law, your claim is procedurally barred because it wasn't properly raised. Federal courts do that all the time, and a lot of times at the state's insistence. Well, and I would say, Your Honor, the ADPA says that a federal court is free to deny an unexhausted claim when it's easier to do so on the merits. It's simply when the question becomes granting relief, a state cannot, unless it explicitly does so, waive the exhaustion requirement. And again- No, that's not my point. I understand it, and you're exactly right about that. My point is that federal habeas courts apply procedural default doctrines, even in cases where a claim has never, ever, ever been presented to a state court, and they reason that no one ever presented the claim. It's too late to raise it now, as you're suggesting for Mr. Clark, and therefore, the claim that was formerly unexhausted is now procedurally defaulted. End of story. And that was being, not only after ADPA was passed, but before ADPA was passed. TV Lane did that in and of itself. And again, where the court is denying relief, that doesn't create a problem. You can deny relief on an unexhausted claim. I mean, I would point the court to the discussion in Coleman- You're suggesting that only a state court can issue a procedural default ruling. And that's just not right, I think. Unless you can tell me why that's right or wrong. Because in Harris v. Reed, the Supreme Court says a state court has the right to both procedurally default a claim and to enter a judgment on the merits in the alternative without sacrificing its interests in comity, finality, and federalism. And when a federal court seeks to speak on behalf of the Alabama Supreme Court, one, it takes away the ability to consider an alternative holding on the merits. Two, it can't be that the Supreme Court said that they are concerned about procedures that channel ineffective assistance of counsel claims into collateral proceedings where the Sixth Amendment doesn't apply, and then talks about states ensuring that collateral counsel in those systems provide competent representation, but then does not give the states a mechanism to enforce that by first reviewing these types of claims. And it was clear in Martinez, where a state court is confronted with such a situation and declines to review it, then federal courts will act. But how else could the Alabama Supreme Court do exactly what the U.S. Supreme Court did in Martinez unless the state prisoner comes to that court first and presents its claim? The underlying claim is the Sixth Amendment ineffective assistance physical restraint claim. That claim still needs to be presented to a state court, and that state court needs the first opportunity to address the constitutional violation. And only if it declines to do so does a DEPA allow a federal court to step in and do anything. And I would note that in Coleman, where the court discusses Murray versus Carrier, and talks about cause and prejudice as grounds to ignore a procedural default, that it was rooted in the same equitable considerations that gave birth to the rule of Martinez. But yet, the procedural default there, the cause and prejudice, has to be something external to the petitioner and generally imputed to the state as sovereign. And that did not happen in this case. The state of Alabama has done absolutely nothing at this point to prevent Clark from presenting his claim to a state court. He could have filed an exhaustion petition, he could have sought stay and obey, and he did not do so. Counsel, you pointed to Hitson, and in footnote 56 in that case, it addresses the issue that we're wrestling with right now. And it says where a return to state court would be futile, because the petitioner's claims would clearly be barred by state procedural rules. A federal court can forgo the needless judicial ping-pong and treat unexhausted claims as procedurally defaulted. In this case, are you saying that in Alabama, there is no clear bar by the state procedural rules? I'm saying there is no more so a clear bar than there was in 2012 when the District Court in Martinez and the Court of Appeals in Martinez said, you know what, you cannot base procedural default in these proceedings on collateral counsel because our reading of Coleman says you can't, and then the United States Supreme Court reversed. I cannot imagine a system of federalism where the United States Supreme Court is allowed to modify the procedural and equitable considerations that it gives in its post-conviction review habeas corpus, but then deprives the Alabama Supreme Court of the same opportunity. And let's say the Alabama Supreme Court does decline to issue a merits ruling and stands solely on procedural default or doesn't do an alternative ruling. At that point, that is what the federal court is addressing in habeas, is the state refusal to consider the claim. But you can't say that the Alabama Supreme Court would not consider the same equitable considerations presented in Martinez in an appropriate case. So you want us to remand the case to the District Court, hold the habeas petition in abeyance, and have Mr. Clark go to the Alabama courts on this claim to see if he can get any relief? Respectfully, Your Honor, I think it would be too late at this point. First, the stay and obey proceeding, that's something that a petitioner asks the District Court for, and that did not happen. There was nothing stopping Mr. Clark from filing a exhaustion petition in state court. And the failure to do so is not Mr. Clark's initial collateral counsel's fault. Habeas counsel made a decision when they got those two affidavits to run to federal court and present those affidavits to federal court without ever presenting that Sixth Amendment claim to any state court, much less obtain a procedural default ruling from any state court. Now, I will note, Your Honor, since I only have a few minutes left, that exactly one month ago, a panel of this court, which included Judge Branch and Dallas V. Warden, decided to dodge a complicated analysis of what it termed a patch of procedural underbrush under somewhat similar circumstances to this case. There, the question was when the claim had been procedurally defaulted in Rule 32, and whether that default was attributable to initial review collateral counsel or appellate collateral counsel. And the court said it was going to avoid that complicated analysis because Dallas' claim fell on the merits in any event, and the same could be said here. At its core, Mr. Clark's physical restraint ineffectiveness claim is a crystal ball claim of the sort that this court has rejected for decades. Clark faults his trial counsel for not foreseeing the debt holding six years prior to it being announced. And while Mr. Clark disputes this characterization of his argument in his reply brief, a plain reading of page 79, document 13, the amended Habeas petition, shows that Clark's physical restraint Sixth was based solely on debt, a decision that had not been announced in 1999. To quote the petition, Clark alleged, quote, prejudice is presumed when the jurors saw the restraints. There is a footnote solely to debt, as happened here. And then there is a footnote to two of the five affidavits that were never presented in state court. Thus, there is a reasonable probability that the outcome of trial would have been different. That's it. It's plain that Clark's physical restraint ineffectiveness claim relied solely on debt, which did not exist as grounds for prejudice. There's no clearly established federal law that would support Clark's underlying physical restraint claim. As this court is aware, clearly established federal law comes from the holdings of the Supreme Court and not dicta. The holdings in Allen and Holbrook, also cited in the brief by Mr. Clark, cannot establish a basis for a viable physical restraint ineffectiveness claim. The defendant could be removed from the courtroom when his conduct made further proceedings in the trial nearly impossible. The holding... Counsel. Yes, sir. You have two minutes remaining. Thank you. The holding in Holbrook was that uniformed law enforcement officers visible to the jury could be used as an additional security measure without depriving a defendant of a fair trial, especially where there was a concern about possible flight because the defendants were being held without bond. So, Mr. Clark's claim faults his trial counsel for not seeking or obtaining a ruling that physical restraints were warranted. However, the court of criminal appeals opinion on direct appeal references the fact that Clark had been found in possession of a handcuffed key while awaiting trial, that he had threatened to kill another inmate, that he had cursed at a guard and refused to obey an order, that he had fought with other inmates, and that he had two of prior criminal activity. The record further contains... Yes, sir. This is Judge Wilson. With the time that you have left, I would like to return to a question that I asked you earlier, and I just want to make sure that I understand the answer to your question. Did you tell me there is still an avenue available for Clark, independent of this case, to return to state court and file a petition for a second or successive post-conviction relief? I think the best answer to that, Your Honor, is at the time the affidavits were obtained in 2016, yes, there absolutely was an avenue to file a petition and ask for the same equitable in the Alabama state court system. I would say it's much less likely because we're talking about an equitable rule, and Mr. Clark has failed to seek vindication in state court for four years, and that's attributable to habeas counsel, not initial review counsel, so I think it's apples and oranges to ask what he can do now versus what he can do as a result of his habeas counsel's decision to bypass state court in the first instance. But in any event, if we decide in this case, if we enter an opinion finding that he's not entitled to the benefit of Martinez versus Ryan because he failed to present his claim to the state court in a timely and proper manner, he wouldn't, I mean, that would make any application, any other application that he would file in state court moot, wouldn't it? It would, but again, that is not attributable to initial review counsel. That is attributable to a decision that habeas counsel made when they obtained the juror affidavits and decided to proceed to federal court and to not proceed back to state court, and that did not happen in Martinez, and it did not happen in Trevino. County, your time has expired. Thank you, Your Honors. Thank you, Mr. Houts, and Mr. Schultz, I believe you have reserved some time for rebuttal. Mr. Schultz, are you there? I apologize, Your Honor. I had placed myself on mute so as to not cause any difficulties for the court. I believe I've retained seven minutes for rebuttal. Correct. Okay. Yes, Your Honor, a number of points really need to be addressed here. A little louder, please. Oh, yes, Your Honor. A number of points really need to be addressed here. First, the commissioner just stated that in our briefing, two things, this was disingenuous at best, but this is completely inaccurate. First, they stated that we relied solely on DEC. As I pointed out in our briefing, we did not rely solely on DEC. As a matter of fact, we stated that this was an unreasonable application of Holbrook and Allen. So, we were relying completely on Holbrook and Allen. That was in our amended petition at DOC 13 at page 67. I believe that's the correct page number. I've been looking for that here during the break, but I also did cite that in my reply brief. So, we did request that. The commissioner also says that we could, and I actually quoted this as he was saying it, that we could have sought a stay and obey, and he did not do so. That is also incorrect. At DOC 55 at 30, we did offer the district court that as an alternative. We stated that there's nothing in Alabama law, and of course, we cited Alabama law stating that they would not hear the claim at this point. And so, of course, it would be irrelevant to engage the judicial ping pong, but if the court does, and Snowden makes this clear, if the court does feel that there's a reasonable chance that the state courts would hear the claim, then they are free to send the case back. But we did ask for that. So, that was also a misrepresentation of the record. Also, he cites that this did not, that Martinez did not abrogate the exhaustion requirement. Once again, that shows a fundamental misunderstanding of, and I believe this court was articulating that well, of how this court, even pre-Martinez, discussed these cases. And I would point this court to Kelly v. Secretary again. In Kelly, this court discussed the fact, and I'll quote from it, and this is not the actual quote, but that the federal courts can decline to then may treat those claims as barred by the state courts as no basis for federal relief. However, it then went on, just like all those other cases that I cited, to determine whether the petitioner could demonstrate cause for failure to claim, to raise the claim. Kelly is particularly instructive, because it was talking about exhaustion and procedural default and the way that those two claims worked together, or the way that those two principles worked together, and stated that the claim was never exhausted, and therefore, it could treat the claim as barred. But again, it did have to look at whether cause could be established. In that case, cause was unavailable, because Kelly was pre-Martinez. The claim at issue was even a case of trial court ineffectiveness. But he was out of luck at that particular point, because Martinez had not come down. So basically, as this court was pointing out, court after court after court, and I did not want to just keep filing 28J letters to this court. And I'm sure that this court, you know, obviously, your clerks and you yourselves are updating Martinez' case law all the time, so I'm sure you're well aware. But I cited cases out of the Third Circuit and the Sixth Circuit that apply this entire principle exactly the way that Mr. Clark did in cases that were indistinguishable from his. But since that time, there's basically been a tsunami of other cases. The Fifth Circuit and the Fourth Circuit have since joined on to that as well. And I'd be happy to file a 28J letter on those. Those were not quite as on point as the Thomas v. Payne case, given that Thomas also talked about when the claims were raised. So I didn't want to inundate the court with those cases. But those cases were Moore v. Sterling, 952 F3D-174. That was the Fourth Circuit, and that was in 2020. And then the Fifth Circuit, also in Nelson v. Davis, 952 F3D-651. And also in November of 2019, Ramey v. Davis, 942 F3D-241. And in Ramey, they discussed specifically that he raised the claims for the first time in the federal court, and that he did not exhaust those allegations in federal court. Nonetheless, they granted a COA in that case, recognizing that Martinez could serve as cause to excuse the procedural default. You have two minutes remaining. Two minutes remaining. Thank you. So essentially, and I know that we didn't address some of the agency principle, I would just point out that I think most of that was addressed in my briefing, but I would just point out that Coleman itself stated without qualification, that a prisoner must bear the risk of attorney error. In other words, whether appointed or retained or hired in any way, because of course, if you retain counsel, if you retain a volunteer counsel, you're still retaining counsel. The court carved that exception out. What Alabama is essentially asking this court to do is cut Martinez in half and say that it would only apply if the petitioner was proceeding pro se and failed to raise a claim, not if counsel was ineffective. Because as Maples pointed out, Alabama is one of the only states that does not result in the, as Justice Scalia called it, the utterly perverse situation where those states providing post-conviction counsel would be subject to later Martinez claims, while those not doing so would be immune unless the petitioner proceeds pro se. I think the rest of that was addressed in my brief. And so I guess in closing, I would simply ask this court to recognize the, I do recognize that this is a confusing concept. When I first started clerking for judges in the Eighth and the Ninth Circuit Court of Appeals, I had a little bit of difficulty grasping this concept, had to read a number of cases to do so. But this court called it a familiar claim, or I'm sorry, a familiar principle that the federal courts may treat unexhausted claims as procedurally defaulted. And this is the key language, even absent a state court determination to that effect, if it's clear from state law that any future attempts at exhaustion would be futile. Counsel, your time has expired. Thank you, Your Honor. If the court would indulge me in a very short finish, that is fine. If not, I believe we can obviously submit it on the briefs. I think we have your arguments, Mr. Schultz. All right. Thank you very much, Your Honor, for your time. And thank you, Mr. Schultz and Mr. Howitz, and we'll take the matter under advisement. And the court is adjourned. Thank you, Your Honor.